# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> Petitioner, ) <br> v. ) <br> ) <br> GIANCARLO PERTILE, ) <br> ) <br> Respondent. ) <br> _____ ) | CASE NO. CR 08-2562 AHM <br><br> RULINGS RE DEFENDANT'S MOTIONS AND COMPETENCY ISSUES |

### 1. Release on Bail

The Court DENIES the motion of Dr. Pertile ("Defendant") to be released on bail. The Court reviewed the applicable burdens of proof that are imposed on the government at the hearing held in Court on August 1, 2008, and the Court incorporates those principles herein by reference. The Court finds that the government has satisfied its burden to prove, by a preponderance of the evidence, that release pre-trial "will not reasonably assure the appearance" of Dr. Pertile. 18 U.S.C. § 3142(b). At the August 1, 2008 hearing, the government proved that defendant had purchased, and continues to retain, numerous assets (*e.g.*, gold and silver worth in excess of $100,000) that he failed to disclose after the indictment was returned in this case. When confronted with the evidence of this material omission (the testimony of I.R.S. Special Agent Broderick, the

testimony of Pretrial Services Agent Kristianna Janich and Government's Exhibit 1) Defendant wisely chose not to respond, exercising his Fifth Amendment privilege. Defendant's lack of candor about his assets (to say the least; some might construe it as deception) significantly undermines Defendant's assurance that he will not flee. Dr. Pertile has stressed that he deeply wishes to visit his elderly parents in Italy, and even if he is sincere in claiming that he would not act on his previously-stated intent to visit there, the strength of family ties might understandably cause him to change his mind again. Even the surrender of Defendant's Italian passport, brought to Court by his daughter, does little to alleviate the risk of flight, given the unrefuted testimony of Agent Janich that both Italian consulates that she contacted confirmed that they would readily issue a replacement passport if an Italian passport-holder merely claims to have lost his previously-issued passport.

The Court also notes that until most recently, Defendant challenged this Court's very authority to preside over this matter, even proclaiming that he was not the defendant in the first place, but merely an agent of the named defendant. Defendant states that now he has abandoned that position, but the fact that he persisted in such unfounded and occasionally disruptive nonsense does cast doubt on whether he would reliably abide by any terms of bail.

**2.     Appointment or Retention of Counsel**

The Court acknowledges that Defendant now intends to allow properly qualified and licensed counsel to represent him, instead of proceeding *pro se*. As the Court carefully explained on more than one occasion, that is a sensible decision from the perspective of Defendant's own interests. The Court in no way wishes or intends to interfere with Defendant's desire to retain counsel. But as the Court pointed out in court on August 1, 2008, his desire to obtain a lawyer does not in its own right warrant release from pre-trial detention, because he can

line up counsel even while in custody. Indeed, Defendant acknowledged that he has interviewed at least two lawyers while in custody. He also has met with the stand-by counsel, Mr. Shannon. He will be permitted to conduct interviews with other potential counsel as well.

If Defendant does not retain private counsel, he may be eligible for Court-appointed counsel. If he seeks to be represented by an attorney pursuant to the Criminal Justice Act, the Court would be favorably disposed to appointing such an attorney (not necessarily Mr. Shannon). Defendant may convey his position on this alternative to the Court, in a written communication comparable to those he has previously mailed.

**3.   Competency**

Several weeks ago, Defendant's Court-appointed stand-by counsel recommended that Defendant be examined pursuant to 18 U.S.C. § 4247(b). At the August 1, 2008 hearing, the Court stated that it intended to obtain information from the appropriate officials at the "M.D.C." before determining whether to subject defendant to a mental health examination. Since then the Court has received information from Dr. Hope, who met with Defendant for at least one hour, and from Eliezer Ben-Shmuel, Esq. Based on the information they provided, there is no basis whatsoever to require Defendant to undergo a mental health examination. Although Dr. Pertile professed to have certain views that are, to say at least, unconventional and totally unfounded, he is not only intelligent and highly educated, but also fully lucid and comprehending.

//
//
//
//
//

**4.    Other C.J.A. Requests**

On behalf of Defendant, Mr. Shannon filed a certain *Ex Parte* Application under seal. The Court has granted that application.

IT IS SO ORDERED.

DATE: August 4, 2008

A. Howard Matz
United States District Judge

cc: PSA